ENTERGY ARKANSAS, INC., an Arkansas corporation; Entergy Gulf States, Inc., a Texas corporation; Entergy Louisiana, Inc., a Louisiana corporation; Wolf Creek Nuclear Operating Corporation, a Delaware corporation; Omaha Public Power District, a public corporation and political subdivision of the State of Nebraska, Plaintiffs,

Central Interstate Low–level Radioactive Waste Commission, Realigned Plaintiff,

US Ecology, Inc., a California corporation, Intervenor–Plaintiff,

v.

State of NEBRASKA; Nebraska Department of Environmental Quality; Randolph Wood, individually and in his official capacity; Jay Ringenberg, individually and in his official capacity; Nebraska Department of Health and Human Services Regulation & Licensure; David P. Schor, individually and in his official capacity; Cheryl Rogers, individually and in her official capacity; and John Doe, Jane Doe and Doe Companies 1 through 20, individually and in their official capacities, Defendants.

No. 4:98CV3411.

United States District Court,
D. Nebraska.

Sept. 15, 1999.

John P. Heil, Thomas E. Johnson, Patrick J. Ickes, Baird, Holm Law Firm, Stephen M. Bruckner, Joseph E. Jones, Fraser, Stryker Law Firm, Omaha, NE, for Plaintiffs.

Alan E. Peterson, Shawn D. Renner, Cline, Williams Law Firm, Lincoln, NE, for Realigned Plaintiff.

Steven G. Seglin, Rocky C. Weber, Crosby, Guenzel Law Firm, Lincoln, Leonard B. Levine, Los Angeles, CA, Rene M. Devlin, Laurence H. Levine, Latham, Watkins Law Firm, Chicago, IL, for Intervenor–Plaintiff.

Linda L. Willard, Nebraska Attorney General's Office, Annette M. Kovar, Nebraska Department of Environmental Quality, Lincoln, NE, John L. Wittenborn, William Bradford Reynolds, Collier, Shannon Law Firm, Washington, DC, for Defendants.

### Memorandum and Order

KOPF, District Judge.

The State of Nebraska, various state agencies, and individual state employees sued in their official and individual capacities have filed motions to dismiss this case. In this opinion, I deal only with the motion to dismiss directed at the suit brought by

the Central Interstate Low–Level Radioactive Waste Commission. That motion primarily raises the Eleventh Amendment as a reason to dismiss. For the reasons set forth below, I deny the motion to dismiss.

## I. HISTORY

I presume a basic understanding of this case and the extraordinary litigation that preceded it. *See Entergy Arkansas, Inc. v. Nebraska*, 46 F.Supp.2d 977 (D.Neb. 1999) (Central Interstate Low–Level Radioactive Waste Commission brought action alleging that the State of Nebraska, and certain of its agencies and employees, denied a disposal site license application for political reasons in violation of the "good faith" requirement imposed by an interstate compact; on Commission's motion for preliminary injunction staying an administrative appeal, the court held that an injunction was warranted), *appeal docketed*, No. 99–2376 (8th Cir. May 25, 1999).[1] Since I assume this knowledge, I will spend little time explaining the background of this case.

There are three categories of plaintiffs. The first category consists of the Central Interstate Low–Level Radioactive Waste Commission (Commission) that was created by the Central Interstate Low–Level Radioactive Waste Compact (Compact).[2] The Commission is responsible for the development of a low-level radioactive waste disposal site. The second category consists of U.S. Ecology, Inc. (USE). The Commission hired USE to prosecute the

license application and build the waste disposal site in Nebraska. The third category are the generators of nuclear waste (Generators). The Generators, who would use the site to store nuclear waste, partially funded the licensing and would have ultimately funded the building and operation of the site. The basic claim of every plaintiff is that the defendants acted in bad faith while denying a license to construct a low-level nuclear waste disposal site. Even at this early stage, there is a great deal of evidence to support this claim. *Id.* at 994–95.

The Commission sued only the State of Nebraska. (Filing 27, Pt. II at 11–23.) The Commission claims Nebraska violated the "good faith" provisions of the Compact. (*Id.* ¶ 46 at 14–18.) It claims that Nebraska wrongfully took millions of dollars directly or indirectly from the Commission, wrongfully delayed the license decision, and wrongfully refused to issue a license to build a storage facility. The Commission specifically alleges that it has the responsibility under the Compact to require Nebraska to act in good faith. (*Id.* ¶ 43.) The Commission seeks: (1) damages; (2) an accounting; (3) a declaration that Nebraska has violated the Compact, especially the "good faith" provision; (4) removal of Nebraska from the licensing process; and (5) the appointment of an impartial third party to complete the licensing process. (*Id.* ¶ 47 at 18–20 & prayer at 20–23.)

**1.** That decision has been appealed by Nebraska. However, the parties have agreed that the appeal should not delay consideration of this motion. More importantly, because this decision on the motion to dismiss does not reexamine or supplement the injunction decision, the appeal of the injunction does not divest this court of jurisdiction over the pending motion to dismiss. *Compare West Publishing Co. v. Mead Data Central, Inc.*, 799 F.2d 1219, 1229 (8th Cir.1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987) *and Janousek v. Doyle*, 313 F.2d 916, 920 (8th Cir.1963) *with Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1106 (8th Cir.), *cert. denied*, — U.S. —, 119

S.Ct. 2400, 144 L.Ed.2d 799 (1999). In addition, since I will deny Nebraska's motion to dismiss the Commission's suit, there is no likelihood that my ruling might incidentally deprive the Court of Appeals of jurisdiction or otherwise moot the appeal. Thus, I perceive no prudential considerations that should "stay [my] hand." *Coeur D'Alene Tribe*, 164 F.3d at 1107.

**2.** The Compact, as it exists currently, appears at Appendix § BB, Neb.Rev.Stat. Vol. 2A (Reissue 1989). Citations to the Compact will be to the article number (such as "ART. I") without further elaboration.

The Compact's purpose is to provide a framework for a cooperative effort between the party states to promote the safe and efficient management of low-level radioactive wastes. ART. I. The Compact was enacted with the consent of Congress, and each signatory state recognized that "the Congress, by enacting the Low–Level Radioactive Waste Policy Act, ... has authorized and encouraged states to enter into compacts for the efficient management of wastes." *Id.*

## II. DISCUSSION

Keeping in mind that the Commission has sued only the State of Nebraska (and state employees in their official capacities), Nebraska's motion to dismiss is based upon the following grounds: (1) Nebraska has Eleventh Amendment immunity; (2) the Commission lacks standing; (3) suit is barred for lack of exhaustion of administrative remedies; (4) the court should abstain; and (5) suit is barred under the *Noerr–Pennington* doctrine. I reject each of these arguments.

The Eleventh Amendment immunity question is a difficult one. It presents a question of first impression. Nebraska's other arguments are of the "make-weight" variety and merit no discussion.

### A. Eleventh Amendment Immunity

Nebraska contends that it cannot be sued by the Commission because it has immunity from suit under the Eleventh Amendment. I reject this argument for related reasons. Initially, the Eleventh Amendment does not apply to a suit against Nebraska by the entity created by the Compact and directed by Congress to serve as an enforcement mechanism. Alternatively, when Nebraska signed the Compact, it consented to suits brought by a creature created to enforce the document.

### The Specific Provisions of the Compact

The Compact, dealing with the disposal of low-level nuclear waste, creates a Commission, consisting of representatives from each state, to act for the party states in implementing the terms of their agreement. ART. IV. The Commission "is a legal entity separate and distinct from the party states and shall be so liable for its actions." ART. IV(k)(2).

If a party state has a dispute with the Commission, that state may seek review "in the United States District Court in the district wherein the commission maintains its headquarters ...." ART. IV(*l*). Furthermore, the Commission "shall ... [h]ear and negotiate disputes which may arise between the party states regarding this compact." ART. IV(m)(3). In addition, the Commission "shall ... [r]equire all party states and other persons to perform their duties and obligations arising under this compact by an appropriate action in any forum designated in section (e) of Article IV." ART. IV(m)(8).

■ Article IV(e) grants the Commission the power to "initiate any proceeding ... before any court of law or any federal ... agency ... that has jurisdiction over any matter arising under or relating to the terms and provisions of this compact." ART. IV(e).[3] With regard to lawsuits of this kind, no party state has a veto over the decision of the Commission to commence the suit. ART. IV(b) (with exceptions not pertinent here, the majority rules).

The Commission alleges that Nebraska breached its duty of good faith under the Compact. ART. III(f) ("Each party state has the right to rely on the good faith performance of each other party state."). Therefore, the Commission argues that it is obligated under the Compact to sue Nebraska; that is, the Commission "shall

**3.** This court has federal question jurisdiction over disputes regarding the Compact since an interstate compact is a federal law. *See, e.g., County of Boyd v. U.S. Ecology, Inc.,* 48 F.3d 359, 361 (8th Cir.) ("An interstate compact is a creature of federal law"; therefore, federal question jurisdiction exists for the purpose of deciding whether duties under the Compact have been breached), *cert. denied,* 516 U.S. 814, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995).

... [r]equire all party states and other persons to perform their duties and obligations arising under this compact by an appropriate action in any forum designated in section (e) of Article IV." ART. IV(m)(8).

### The Context of the Eleventh Amendment Dispute

■ Consequently, the question is whether an entity created by a compact to enforce the terms of the document is prohibited from suing one of the party states because of the Eleventh Amendment. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

The Supreme Court has made it clear that the Eleventh Amendment is expansive in its protection of state sovereignty. *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank,* —— U.S. ——, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999) (although the Patent and Plant Variety Protection Remedy Clarification Act expressly abrogated the States' sovereign immunity, the Act's abrogation of immunity is invalid because it cannot be sustained as legislation enacted to enforce the guarantees of the Fourteenth Amendment's Due Process Clause) (*Florida Prepaid*); *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* —— U.S. ——, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (a federal court had no jurisdiction to entertain the suit because the Trademark Remedy Clarification Act, subjecting states to suit brought under the Lanham Act, did not validly abrogate Florida's sovereign immunity since no property right within the meaning of the Fourteenth Amendment was at stake and Florida did not waive its immunity) (*College Savings Bank*); *Alden v. Maine,* —— U.S. ——, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (Fair Labor Standards Act suit could not be brought against Maine in its own courts because the States' immunity from private suit is beyond Congressional power to abrogate by Article I legislation and Maine had not consented to suit) (*Alden*); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (Congress lacked power under the Commerce Clause to abrogate States' sovereign immunity) (*Seminole Tribe*).

None of these cases, however, deal with an interstate compact signed by a state-defendant, approved by Congress under the Compact Clause of the Constitution, which is sought to be enforced by a compact-created entity that brings suit against the state-defendant. The Compact Clause provides that "[n]o State shall, without the Consent of Congress, ... enter into any Agreement or Compact with another State ...." U.S. CONST. art. I, § 10, cl. 3.

Disputes placing at issue both the Compact Clause and the Eleventh Amendment are unique. As Justice Scalia put it, those cases are "fundamentally different." *College Savings Bank,* —— U.S. at ——, 119 S.Ct. at 2231. It is with the understanding that this case is "fundamentally different" from other Eleventh Amendment controversies that I now turn to Nebraska's argument.

### B. The Amendment Does Not Apply to Suits by Compact Clause Entities

At first, the Eleventh Amendment would not seem to have any relevance to the Commission's suit against Nebraska. The Amendment, read literally, bars only suits "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Obviously, the Commission is not a "Citizen" or "Subject" of any particular State or of any Foreign State.

However, "sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself." *Alden,* 119 S.Ct. at 2254 (citations omitted). Thus, "the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone

but by fundamental postulates implicit in the constitutional design." *Id.* The "Court has upheld States' assertions of sovereign immunity in various contexts falling outside the literal text of the Eleventh Amendment." *Id.* 119 S.Ct. at 2253. Nonconsenting states have been held to be immune from suits brought by citizens of the same state, *Hans v. Louisiana,* 134 U.S. 1, 14–15, 10 S.Ct. 504, 33 L.Ed. 842 (1890), from suits brought by federal corporations, *Smith v. Reeves,* 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900), from suits by foreign nations, *Principality of Monaco v. Mississippi,* 292 U.S. 313, 329, 54 S.Ct. 745, 78 L.Ed. 1282 (1934), and from suits by Indian tribes, *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). Likewise, even though the word "admiralty" is not mentioned in the Eleventh Amendment, sovereign immunity applies in that context as well. *Ex parte New York,* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).

Consequently, we must dig deeper. We must examine the "fundamental postulates implicit in the constitutional design." *Alden,* —— U.S. at ——, 119 S.Ct. at 2254. I proceed to that task next.

### Nebraska Received a "Gratuity" When Congress Consented to the Compact

Writing for the Court, Justice Scalia has made clear that: "Under the Compact Clause, U.S. Const., art. I, § 10, cl. 3, States *cannot* form an interstate compact without first obtaining the express consent of Congress; the granting of such consent is a gratuity." *College Savings Bank,* —— U.S. at ——, 119 S.Ct. at 2231 (emphasis in original). Nebraska argues that as a recipient of a gratuity, it can ignore the terms of the gift. It claims that it has immunity because Nebraska is a sovereign even though the Commission is "required" to sue the State in "any forum" or "any court of law" chosen by the Commission. That position ignores the "fundamental difference" that Justice Scalia wrote about.

### The Constitution Provides for Two Methods of Resolving Disputes Between States

The Constitution established two methods for resolving disputes between the states. *Petty v. Tennessee–Missouri Bridge Comm'n,* 359 U.S. 275, 278 n. 5, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959) (assuming a commission created by an interstate compact had Eleventh Amendment immunity, such immunity was waived by the compact itself). The first method is the original jurisdiction conferred upon the Supreme Court by the Constitution to resolve disputes between the states. *Id.* (citing U.S. Const. art. III., § 2). "The other is the compact ...." *Id.* (citation omitted).

As for the first method, we know that when the Supreme Court exercises its original jurisdiction there is no sovereign immunity and the Eleventh Amendment does not apply. *Texas v. New Mexico,* 482 U.S. 124, 130, 107 S.Ct. 2279, 96 L.Ed.2d 105 (1987) (holding that monetary relief could be awarded against New Mexico because it acted in bad faith by failing to deliver water called for by a compact). As the Supreme Court said, "[i]n proper original actions, the Eleventh Amendment is no barrier, for by its terms, it applies only to suits by citizens against a State." *Id. See also Alden,* —— U.S. at ——, 119 S.Ct. at 2267 ("In ratifying the Constitution, the States consented to suits brought by other States ....").

What about the second method? Specifically, what should we make of the claim of sovereign immunity when a signatory state is sued by a Compact Clause entity? In order to understand why signatory states to a compact possess no sovereignty, and thus no immunity, in suits brought by Compact Clause entities, one must understand the obscure history of U.S. Const. art. I, § 10, cl. 3.

### History Supports the Proposition that at the Founding the States Retained No Sovereignty Regarding Compact Conditions Imposed by Congress

"[T]he history of the constitutional provisions providing for this resource of state-

craft ha[d] received scant attention" until May of 1925 when Felix Frankfurter and James M. Landis published their seminal work on the subject. *See* Felix Frankfurter & James M. Landis, *The Compact Clause of the Constitution—A Study in Interstate Adjustments*, 34 Yale L.J. 685, 691–92 (1925) (*"The Compact Clause of the Constitution"*).[4] "The records of the Constitutional Convention furnish no light as to the source and scope of this compact provision of Article I, Section 10." *Id.* at 694. The Federalist papers did not provide any insight either. *Id.* However, "the history of the times furnishe[d] ample commentary." *Id.*

According to Frankfurter and Landis, the "framers were familiar with the modes of settlement [between colonies] prior to the Revolution ...." *Id.* At that time, there were two methods for resolving disputes between the colonies. *Id.* at 692–93. These methods normally began with "[n]egotiations between the contending colonies." *Id.* at 692.

If the negotiations were fruitful, "the further approval of the Crown was required." *Id.* (citing *South Australia v. Victoria*, 12 C.L.R. 667, 704 (1911) (quoting Lord Mansfield stating: "I apprehend His Majesty will confirm their agreement, which of itself is not binding upon the Crown ....")). Thus, a settlement, but only after it was approved by the Crown, was the first method for resolving disputes between contentious colonies.

The second method, if settlement was not possible or negotiations were not pursued, "was an appeal to the Crown, followed normally by a reference of the controversy to a Royal Commission."[5] *Id.* at

693. If the Royal Commission's decision was not acceptable, then "an appeal lay to the Privy Council" because the Crown was normally too busy to hear those disputes directly.[6] *Id.*

"Historically the consent of Congress, as a prerequisite to the validity of agreements by States, appears as the republican transformation of the needed approval by the Crown." *Id.* at 694. But it was not only history that motivated the framers; they had "very practical objectives in view in conditioning agreement by States upon consent of Congress." *Id.*

Even agreements between states that involve no disputes "may affect the interests of States other than those parties to the agreement: the national, and not merely a regional, interest may be involved." *Id.* at 695. Therefore, the Constitution was drafted to provide that "Congress must exercise national supervision through its power ... to grant [consent] under appropriate conditions." *Id.* To make the point clear, the Constitution specifically *prohibits* the states from entering into compacts *unless* Congress approves. *Id.* at 691 n. 25. This is why the authority for the States to enter into compacts finds its place "in a section [of the Constitution] dealing with restrictions upon the States." *Id.* The "framers thus astutely created a mechanism of legal control" of the States. *Id.* at 695.

**Precedent Supports the Proposition that Congress Has the Plenary Power to Attach Enforcement Conditions to Compacts and the Eleventh Amendment Does Not Limit that Power**

What does this history mean? The history is understandable if we remember

---

4. A few years before *The Compact Clause of the Constitution* was written, the Supreme Court gave a brief historical explanation of that provision of the Constitution. *See Virginia v. West Virginia*, 246 U.S. 565, 597–600, 38 S.Ct. 400, 59 L.Ed. 1272 (1918). The Court's interpretation was consistent with the later assertions of Frankfurter and Landis. For a more recent history, see *United States Steel Corp. v. Multistate Tax Comm'n*, 434 U.S. 452, 460–72, 98 S.Ct. 799, 54 L.Ed.2d 682 (1978).

5. It is probably not accidental that the Commission, in the Compact before this court, appears to be the Congressional equivalent of the Crown's reference to a "Royal Commission."

6. Again, the provision in the Compact, authorizing the Commission to select "any court of law" in which to sue Nebraska, fits nicely as the Congressional equivalent of the Crown's delegation to the Privy Council.

Justice Scalia's remarks. Compact Clause cases are "fundamentally different" when it comes to Eleventh Amendment analysis. This is because Congressional approval under the Constitution is a "gratuity." *College Savings Bank,* —— U.S. at ——, 119 S.Ct. at 2231.

When the States engage in activities not specifically restricted by the Constitution, they generally enjoy Eleventh Amendment immunity. However, if they enter into an arena from which they were, at the Founding, specifically barred, then quite different rules apply. Those rules come with the consent ("gratuity" in the words of Justice Scalia) of Congress. In that circumstance, the States must accept the controls placed upon them by Congress. Therefore, in a case involving a suit brought by a Compact Clause entity specifically authorized to sue a signatory state, the Eleventh Amendment is not applicable, since, at the Founding, the state had no right whatever to pursue the object of the compact. Simply put, a signatory state has no immunity from suit by a Compact Clause creation because that state had no sovereignty (power) over the enforcement mechanism chosen by Congress.

This view is supported by *Virginia v. West Virginia,* 246 U.S. at 600–602, 38 S.Ct. 400. That case involved a compact approved by Congress that resulted in a judgment against West Virginia for more than $12 million. West Virginia argued that the debt could not be enforced against it. The Supreme Court recognized that the Eleventh Amendment had overruled the Court's holding in *Chisholm v. Georgia,* 2 U.S.(2 Dall.) 419, 1 L.Ed. 440 (1793). *Id.* at 600, 38 S.Ct. 400.

Nevertheless, after surveying the history that Frankfurter and Landis were later to explore in more depth, the Court ruled that "*the power of Congress to refuse or to assent to a contract between States carried with it the right, if the contract was assented to and hence became operative by the will of Congress, to see to its enforcement.*" *Id.* at 601, 38 S.Ct. 400 (emphasis added). That enforcement "*power is plenary and complete*" subject only to the requirement that it be relevant and appropriate to Congressional power under the Compact Clause. *Id.* at 602, 38 S.Ct. 400 (emphasis added).

The Court thus concluded that "by the very fact that the national power is paramount in the area over which it extends, the lawful exertion of its authority by Congress to compel compliance with the obligation resulting from the contract between the two States which it approved *is not circumscribed by the powers reserved to the States.*" *Id.* (emphasis added). The Court then generally found for Virginia. *See also Texas v. New Mexico,* 482 U.S. at 130, 107 S.Ct. 2279 (citing *Virginia v. West Virginia* for the proposition that "[t]he Court has recognized the propriety of money judgments against a State in an original action ... and specifically in a case involving a compact .... ").

### The Commission is a Creature of the Compact, Possessing Reasonable and Carefully Delegated Enforcement Powers

But what about a Compact Clause entity? Is it appropriate that such an entity has the power to sue a recalcitrant signatory state in "any forum" and in "any court of law" using "any proceeding" it chooses? The courts have given us some insight into that question, and the cases suggest, at least indirectly, that Compact Clause creations appropriately possess the power to sue a signatory state in whatever venue Congress gives as an option in the Compact.

Entities like the Commission enjoy "a significantly different position in our federal system than do the States themselves." *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 40, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) (holding that the Eleventh Amendment did not apply to a Compact Clause entity). As a matter of fact, "Compact Clause entities formed to deal with 'broad, region-wide problems' *should not be regarded as 'an affirmation of a*

narrow concept of state sovereignty,' but as 'independently functioning parts of a regional polity and of a national union.'" *Id.* (emphasis added) (citation omitted). And, as our Court of Appeals has said, the Commission is an "interstate agency" possessing "a reasonable and carefully limited delegation of power." *Nebraska v. Central Interstate Low–Level Radioactive Waste Compact Comm'n,* 187 F.3d 982, 985 (8th Cir.1999) (citing *West Virginia ex rel. Dyer v. Sims,* 341 U.S. 22, 31, 71 S.Ct. 557, 95 L.Ed. 713 (1951)).

### Summary

Given the foregoing, Congress has the plenary power to provide for the enforcement of a compact, and such plenary power is not limited by the Eleventh Amendment. Moreover, when Congress approved this Compact "requiring" the Commission to sue Nebraska if it failed to perform its "duties and obligations" (by means of "any proceeding" in "any forum" or "any court of law" chosen by the Commission), the condition was both relevant and appropriate to Congress' power under the Compact Clause.

This is no surprise to Nebraska. In the past, it has argued that the State had a right to a jury trial in cases involving the Compact because "it may be subjected to a suit for damages for its failure to abide by the Commission's declarations ...." *Nebraska v. Central Interstate Low–Level Radioactive Waste Comm'n,* 974 F.Supp. 762, 769 n. 7 (D.Neb.1997) (sustaining objection to Nebraska's jury demand).

### C. Nebraska Explicitly Consented to Suits Brought by the Commission

If I am wrong, and the Eleventh Amendment does apply to suits against a signatory state by a Compact Clause entity, Nebraska has nevertheless consented to the suit brought by the Commission. In arriving at this conclusion, I recognize that a "compact is a voluntary contract between states, and, if approved by Congress, it also becomes federal law." *Nebraska v. Central Interstate Low–Level Radioactive Waste Compact Comm'n,* 1999 WL 615506,

at *2. Thus, while "cognizant that the State's sovereign powers are potentially limited by the Compact, ... a compact is a 'legal document that must be construed and applied in accordance with its terms.'" *Id.* (quoting *Texas v. New Mexico,* 482 U.S. at 128, 107 S.Ct. 2279).

### The Words, Structure, and Enabling Legislation of the Compact Provide for Federal Judicial Review

Nebraska consented to suit in this court brought by the Commission when it signed the Compact. The words and structure of the Compact, together with the enabling legislation, compel such a conclusion.

To be specific, Nebraska obligated itself to exercise good faith. ART. III(f) ("Each party state has the right to rely on the good faith performance of each other party state."). Nebraska agreed that if it did not act in good faith, the Commission was "required" to bring suit against it anywhere it chose. ART. IV(m)(8) (stating that the Commission "*shall ... [r]equire all party states ... to perform their duties ... arising under this compact by an appropriate action in any forum* designated in section (e) of Article IV.") (emphasis added). Article IV(e) grants the Commission the power to "initiate *any proceedings ... before any court of law, or any federal ... agency ...* that has jurisdiction over any matter arising under or relating to the terms and provisions of this compact." ART. IV(e) (emphasis added). Nebraska retained no right to veto such a suit. ART. IV(b) (with exceptions not pertinent here, the majority rules). Nebraska also agreed that its laws were subservient to the Compact in the event of an inconsistency. ART. VI(6)(b) & (c). Furthermore, Nebraska agreed it would not "enforce any law or regulation which is inconsistent with this compact." ART. VI(6)(b).

To argue that the Compact did not explicitly provide for a suit by the Commission against Nebraska in federal court also disregards the fact that interstate compacts have historically been treated as federal laws subject to review by the federal

courts. *See, e.g., County of Boyd v. U.S. Ecology, Inc.,* 48 F.3d at 361 (citing *Cuyler v. Adams,* 449 U.S. 433, 438, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981)). Nebraska and Congress must have understood that the federal courts had federal jurisdiction over compact cases brought by Compact Clause entities explicitly "required" to sue a party state when such a state acted in derogation of the Compact.

Since the Founding, Congress has been constitutionally entrusted with the duty of authorizing compacts. Federal jurisdiction over compact suits has been the rule since at least 1851. *Pennsylvania v. Wheeling & Belmont Bridge Co.,* 54 U.S.(13 How.)518, 566, 14 L.Ed. 249 (1851) ("This compact, by the sanction of Congress, has become a law of the Union."). *See Cuyler v. Adams,* 449 U.S. at 438–39 & n. 7, 101 S.Ct. 703 (discussing the development and evolution of the "law of the Union doctrine").

When Congress assented to and enabled the formation of low-level nuclear waste compacts in 1980, it stated that federal judicial review was to be preserved. With exceptions not pertinent here, Congress emphasized that "nothing contained in ... any compact may be construed to ... alter, amend or otherwise affect any Federal law governing the judicial review of any action taken pursuant to any compact." 42 U.S.C. § 2021d(4). To read this Compact as prohibiting federal judicial review of Nebraska's alleged bad faith is to ignore the words of the Compact itself. As importantly, such a misreading also disregards the enabling legislation, predicated upon an express provision of the Constitution existing at the time of the Founding, which in turn was supported by pre-civil war Supreme Court precedent.

In 1851, the Supreme Court asked rhetorically: Once Congress assents to a compact, "[w]hat further legislation can be desired for judicial action?" *Wheeling &*

*Belmont Bridge Co.,* 54 U.S.(13 How.)at 566, 14 L.Ed. 249. Where, as here, Congress explicitly "requires" a Compact entity to sue a signatory state and specifically preserves federal judicial review in the process, the answer to the Supreme Court's question is unmistakable. Nothing more is required. *See, e.g., Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 239–40, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (a state will be deemed to have waived Eleventh Amendment immunity where, "'by such overwhelming implication from the text,'" there is "'no room for any other reasonable construction.'") (citations omitted).

## The Compact Specifically Provides for Federal Judicial Review of Disputes Between Nebraska and the Commission

That a federal court is a proper place to hear this suit, and that Nebraska actually knew that it was consenting to suit in this court, is also made plain by a closely related provision of the Compact. It gives specific jurisdiction to this court over disputes regarding the Compact. ART. IV(*l*) (If any party state has a dispute with the Commission, the state may seek review "in the United States District Court in the district wherein the Commission maintains its headquarters ... within sixty days after the commission's final decision").

Since Nebraska is specifically directed to litigate in federal court when it disputes the Commission's actions [7], it is whimsical to argue that the Commission lacks the right to do the same thing. This is all the more true when one remembers that the Commission is "required" under the Compact to prosecute Nebraska, utilizing "any proceeding," "in any forum" and "in any court of law" or "federal agency" that the Commission may select.

7. In fact, if Nebraska does not do so within 60 days, it loses its right to contest the Commission's action. *Nebraska ex rel. Nelson v. Central Interstate Low–Level Radioactive Waste*

*Comm'n,* 834 F.Supp. 1205 (D.Neb.1993), *aff'd,* 26 F.3d 77 (8th Cir.), *cert. denied,* 513 U.S. 987, 115 S.Ct. 483, 130 L.Ed.2d 395 (1994).

### Supreme Court Precedent Supports the Commission's Suit

Although no case is precisely on point, two Supreme Court opinions tend to support the Commission's construction of the Compact. I turn to those cases next.

Despite assuming that Eleventh Amendment immunity might apply to Compact Clause entities when sued by private individuals, the Supreme Court has found that consent to suit in federal court exists where Congress "approved a sue-and-be-sued clause in a compact under conditions that make it clear that the States accepting it waived any immunity from suit which they otherwise might have." *Petty,* 359 U.S. at 280, 79 S.Ct. 785. In a similar vein, and assuming once again that a compact entity might otherwise possess Eleventh Amendment immunity from suits by private individuals, the Supreme Court found that consent to suit against the entity existed where the compact contained a sue-and-be-sued clause plus a venue provision providing for suit in federal court. *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304–09, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990).

The *Petty* and *Feeney* analysis is equally applicable here. Not only did Nebraska give the Commission the general power to sue when it signed the Compact, it "required" the Commission to sue Nebraska "in any forum" and "in any court of law" selected by the Commission. Moreover, the Compact made clear that a federal judicial forum was appropriate. It specifically gave this court jurisdiction to hear disputes between Nebraska and the Commission.

### Nebraska's Construction of the Compact Could Render It Unenforceable

Nebraska must also admit that its construction of the Compact would render the Commission potentially powerless to do the work entrusted to it by the signatory states and Congress. To be specific, Nebraska's construction would frustrate the purpose of the Compact since it could permit Nebraska to escape from its obligation to exercise good faith.

If Nebraska is correct, and the Commission cannot sue in federal court to enforce the "good faith" provision, it would also appear that the Commission would lack the power to sue in state court. *Alden,* — U.S. at ——, 119 S.Ct. at 2269 (under the Fair Labor Standards Act, Congress could not subject Maine to suit in the state courts absent consent by that State). Moreover, even if the Commission could bring suit in the Nebraska courts, Nebraska has already used its powers to control the administrative process to block consideration of the "bad faith" issue by state hearing officers and judges. *Entergy Arkansas, Inc. v. Nebraska,* 46 F.Supp.2d at 988–89, 989 n. 12, & 993–94 (upon the insistence of the State of Nebraska, the hearing officer expressed an unwillingness to consider "bad faith"; also indicating that a state district judge is apparently limited to the record made by the hearing officer). While the Commission would still have the power to sue for prospective equitable relief against state officials, such relief might be insufficient to remedy past misbehavior. *Compare, e.g., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (monetary relief awarded by a prospective injunction was not warranted) *with Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (authorizing prospective injunctive relief that was monetary in nature). *See also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 280–81, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (stating that a case-by-case approach is required).

Consequently, the "good faith" provision of the Compact might become only advisory if one accepts Nebraska's Eleventh Amendment argument. Such a result is not acceptable because it unnecessarily ignores the plain meaning of the Compact. *See Nebraska v. Central Interstate Low–Level Radioactive Waste Compact Comm'n,* 1999 WL 615506, at *4 (refusing to construe Compact's "reasonable period

provision" in a manner that would render it "merely hortatory").

### Nebraska Relies Upon "Private Suit" Cases that Have Little Relevance to a Suit Brought by a Compact Clause Creation

The cases principally relied upon by Nebraska involved suits brought by *private* parties and not constitutional creations like the Commission. In those types of cases, the Court has been particularly careful not to allow a waiver to be implied.[8] However, because Nebraska agreed to the Commission's powers, the "private citizen-Eleventh Amendment" cases relied upon by Nebraska are largely irrelevant to the question presented by Commission's suit.[9] *Hess,* 513 U.S. at 41–42, 115 S.Ct. 394 ("As part of the federal plan prescribed by the Constitution, the States agreed to the power sharing, coordination, and unified action that typify Compact Clause creations.") (footnote omitted). In contrast to suits brought by Compact Clause entities, it was "the fear of private suits against nonconsenting States" that "was the central reason given by the founders who chose to preserve the States' sovereign immunity." *Alden,* —— U.S. at ——, 119 S.Ct. at 2267. In fact, and in contrast to private suits, "the Constitution contemplates suits among the members of the federal system as an alternative to extralegal measures. ..." *Id.* 119 S.Ct. at 2267.

In short, Nebraska agreed to this suit by signing the Compact which not only permitted but "required" the Commission to sue Nebraska. The Eleventh Amendment was designed to protect states from private suits as opposed to suits among members of the federal system. Given these two points, I am not persuaded by Nebraska's reliance upon cases that have nothing to do with Compact Clause creations.

### Summary

When it signed the Compact, Nebraska consented to a suit brought by the Commission in federal court. The words and structure of the Compact and the Congressional enabling legislation plainly authorize the Commission's suit. In fact, the Commission is "required" to sue Nebraska in "any forum" and in "any court of law" chosen by that body. Still further, the Compact specifically provides that the federal court has the power to review disputes between the Commission and Nebraska.

Nebraska's interpretation of the Compact would produce the senseless result that it has the right to sue the Commission in federal court when a dispute arises under the Compact, but the Commission, which is charged with enforcing the Compact, does not. Nebraska's construction would also make the "good faith" provision potentially meaningless since the Commission's remedies would be limited. Still further, Nebraska primarily relies upon cases involving private suits, and those cases are constitutionally, and therefore categorically, different from a suit brought against a signatory state by a Compact Clause creation.

### D. Monetary Relief

If the Commission is successful in this suit, it might recover nearly $100 million from Nebraska's treasury. I am acutely aware that one (but not the only) purpose of the Eleventh Amendment is to protect the States' treasuries. *See, e.g., Seminole Tribe,* 517 U.S. at 58, 116 S.Ct. 1114.

Nonetheless, if Nebraska lacks Eleventh Amendment immunity either because the

---

8. This court has also been careful to protect Nebraska from unauthorized suits by private individuals in federal court. *See, e.g., DoRan By and Through DoRan v. Condon,* 983 F.Supp. 886(D.Neb.1997) (Nebraska's Tort Claim act did not waive Nebraska's Eleventh Amendment immunity for suits in federal court).

9. However, those cases do have relevance to the claims brought by USE and the Generators. They are not parties to the Compact. But, as noted earlier, I do not now decide Nebraska's motions as they pertain to the claims brought by those private parties.

Eleventh Amendment does not apply to suits brought by Compact Clause creations against signatory states or because Nebraska consented to the suit, a monetary judgment may be entered against Nebraska. *Texas v. New Mexico,* 482 U.S. at 130, 107 S.Ct. 2279 ("We have now agreed ... that New Mexico has not fully performed, and we are quite sure that the Compact itself does not prevent our ordering a suitable remedy, whether in water or money.") (citing *Virginia v. West Virginia,* 246 U.S. 565, 38 S.Ct. 400, 59 L.Ed. 1272). *See also* 13 Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure,* § 3524, at 190 (1984) ("Once a state consents to suit or waives its Eleventh Amendment immunity, the federal court has jurisdiction and the relief available to the plaintiff is not limited by the amendment"). Thus, no matter how one looks at the issue, Nebraska may have to pay a large amount of money if it is found to have acted in bad faith.[10]

### III. CONCLUSION

The Commission's suit presents a unique and difficult question of first impression regarding whether Nebraska has Eleventh Amendment immunity when sued by a Compact Clause entity. Because the Eleventh Amendment does not pertain to Compact Clause entities when they sue a signatory state to a compact, I deny Nebraska's motion to dismiss on Eleventh Amendment grounds. Alternatively, when Nebraska signed the Compact, it consented to the Commission's suit in federal court and, therefore, Nebraska's motion must be denied on that basis as well. Accordingly, and because the other arguments raised by Nebraska lack merit,

IT IS ORDERED that the motion to dismiss (filing 50), to the extent the motion is directed to the claims of the Commission, is denied. As a matter of courtesy, and, in addition to mailing a copy of this opinion to the lawyers, the Clerk shall mail a copy of this opinion to the Clerk of the United States Court of Appeals for the Eighth Circuit. He is requested to make a copy of this opinion available to the panel considering the defendants' pending appeal of the preliminary injunction.

---

10. Extreme care, however, must be exercised before imposing a money judgment on Nebraska. *See, e.g., Texas v. New Mexico,* 482 U.S. at 130–31, 107 S.Ct. 2279 ("That there may be difficulties in enforcing judgments against States counsels caution but does not undermine our authority ....")