**ENTERGY ARKANSAS, INC., an Arkansas corporation; Entergy Gulf States, Inc., a Texas corporation; Entergy Louisiana, Inc., a Louisiana corporation; Wolf Creek Nuclear Operating Corporation, a Delaware corporation; Omaha Public Power District, a public corporation and political subdivision of the State of Nebraska, Plaintiffs,**

**Central Interstate Low–Level Radioactive Waste Commission, Realigned Plaintiff,**

**US Ecology, Inc., a California corporation, Intervenor–Plaintiff,**

**v.**

**State of NEBRASKA; Nebraska Department of Environmental Quality; Randolph Wood, individually and in his official capacity; Jay Ringenberg, individually and in his official capacity; Nebraska Department of Health and Human Services Regulation & Licensure; David P. Schor, individually and**

---

in his official capacity; Cheryl Rogers, individually and in her official capacity; and John Doe, Jane Doe and Doe Companies 1 through 20, individually and in their official capacities, Defendants.

No. 4:98CV3411.

United States District Court,
D. Nebraska.

Sept. 22, 1999.

John P. Heil, Thomas E. Johnson, Patrick J. Ickes, Baird, Holm Law Firm, Omaha, NE, Stephen M. Bruckner, Joseph E. Jones, Fraser, Stryker Law Firm, Omaha, NE, for plaintiffs.

Alan E. Peterson, Shawn D. Renner, Cline, Williams Law Firm, Lincoln, NE, for realigned plaintiffs.

Steven G. Seglin, Rocky C. Weber, Crosby, Guenzel Law Firm, Lincoln, NE, Rene M. Devlin, Laurence H. Levine, Latham, Watkins Law Firm, Chicago, IL, for intervenor–plaintiffs.

Linda L. Willard, Nebraska Attorney General's Office, Lincoln, NE, Annette M. Kovar, Nebraska Department of Environmental Quality, Lincoln, NE, John L. Wittenborn, William Bradford Reynolds Collier, Shannon Law Firm, Washington, D.C., for defendants.

### Memorandum and Order

KOPF, District Judge.

The State of Nebraska, various state agencies, and individual state employees sued in their official and individual capacities (state-defendants), have filed a motion to dismiss this case. In this opinion, I deal with the motion to dismiss directed at the suit brought by the private corporations.

For the reasons set forth below, I grant the motion in part and deny it in part.

### I.

I presume a basic understanding of this complex case and the history that preceded it. *See Entergy Arkansas, Inc. v. Nebraska,* 46 F.Supp.2d 977 (D.Neb. 1999) (Central Interstate Low–Level Radioactive Waste Commission brought action alleging that the State of Nebraska, and certain of its agencies and employees, denied a disposal site license application for political reasons in violation of the "good faith" requirement imposed by an interstate compact; on Commission's motion for preliminary injunction staying an administrative appeal, the court held that an injunction was warranted), *appeal docketed,* No. 99–2376 (8th Cir. May 25, 1999).[1] *See also Entergy Arkansas v. Nebraska,* —— F.Supp.2d ——, No. 4:98CV3411 (D.Neb. Sept. 15, 1999) (denying Nebraska's motion to dismiss the suit brought by the Central Interstate Low–Level Radioactive Waste Commission). Therefore, I will not spend a much time providing a background.

There are three categories of plaintiffs. The first category consists of the Central Interstate Low–Level Radioactive Waste Commission (Commission) that was created by the Central Interstate Low–Level Radioactive Waste Compact (Compact).[2] The Commission is responsible for the development of a low-level radioactive waste disposal site. The second category consists of U.S. Ecology, Inc., (USE). The

---

1. That decision has been appealed by Nebraska. Because this decision on the motion to dismiss does not reexamine or supplement the injunction decision, the appeal of the injunction does not divest this court of jurisdiction over the pending motion to dismiss. *Compare West Publishing Co. v. Mead Data Central, Inc.,* 799 F.2d 1219, 1229 (8th Cir.1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987) *and Janousek v. Doyle,* 313 F.2d 916, 920 (8th Cir.1963) *with Missouri ex rel. Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102, 1106 (8th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 2400, 144 L.Ed.2d 799

(1999). In addition, since I have entirely denied Nebraska's motion to dismiss the Commission's suit, there is no likelihood that my ruling might incidentally deprive the Court of Appeals of jurisdiction or otherwise moot the appeal. Thus, I perceive no prudential considerations that should "stay [my] hand." *Coeur D'Alene Tribe,* 164 F.3d at 1107.

2. The Compact, as it exists currently, appears at Appendix § BB, Neb.Rev.Stat. Vol. 2A (Reissue 1989).

Commission hired USE to prosecute the license application and build the waste disposal site in Nebraska. The third category are the generators of nuclear waste (Generators). The Generators, who would use the site to store nuclear waste, partially funded the licensing and would have ultimately funded the building and operation of the site. The basic claim of every plaintiff is that the defendants, while acting in bad faith, denied a license to construct a low-level nuclear waste disposal site.

The Commission sued only the State of Nebraska. (Filing 27, Pt. II at 11–23.) The Commission claims Nebraska violated the "good faith" provisions of the Compact. (*Id.* ¶ 46 at 14–18.) It claims that Nebraska wrongfully took millions of dollars directly or indirectly from the Commission, wrongfully delayed the license decision, and wrongfully refused to issue a license to build a storage facility. The Commission specifically alleges that it has the responsibility under the Compact to require Nebraska to act in good faith. (*Id.* ¶ 43.) The Commission seeks: (1) damages; (2) an accounting; (3) a declaration that Nebraska has violated the Compact, especially the "good faith" provision; (4) removal of Nebraska from the licensing process; and (5) the appointment of an impartial third party to complete the licensing process. (*Id.* ¶ 47 at 18–20 & prayer at 20–23.)

USE sued Nebraska, various state agencies, various employees of the state agencies, in both their official and individual capacities, and certain unknown individuals and companies who contracted with the State of Nebraska regarding the license application. (Filing 112.) USE has also filed a cross-claim against the Commission asserting that it is subrogated to any monetary recovery made by the Commission.

In the first claim, USE asserts that the defendants violated the Compact's good faith provision and therefore they violated USE's federally protected statutory rights under the Compact. (Filing 112 ¶¶ 64–66 at 16.) In the second claim, USE asserts

that the defendants denied USE substantive and procedural due process regarding the license application. (*Id.* ¶¶ 85 & 86 at 19–20.) In the third claim, USE asserts that the defendants tortiously interfered with agreements between USE and the Commission and the Commission and the Generators. (*Id.* ¶ 94 at 21–22.) USE claims to be a third party beneficiary of the second contract between the Generators and the Commission, called the "Funding Agreement." (*Id.* ¶ 25 at 6.) In this regard, USE asserts that both agreements were entered into under the Compact. (*Id.* ¶¶ 22–25 at 6–7.) Fourth, USE claims that the defendants conspired to tortiously interfere with the agreements mentioned in the third claim for relief. (*Id.* ¶ 99 at 22–23.) Fifth, USE asserts a that it is equitably subrogated to any monetary recovery the Commission may make in this suit. (*Id.* ¶ 114 at 28.) USE seeks damages and broad-ranging equitable remedies, including declaratory and injunctive relief. The relief sought by USE is similar to the relief sought by the Commission.

The Generators bring suit against Nebraska and the other defendants claiming first that the defendants violated their statutory rights under the Compact. (Filing 86 ¶ 90 at 20.) Next, the Generators allege that the defendants violated the plaintiffs' constitutional rights to substantive and procedural due process. (*Id.* ¶ 94 at 21.) Finally, the Generators assert a cross-claim against the Commission for equitable subrogation. (*Id.* ¶ 104 at 23.) The relief sought by the Generators is similar to the relief sought by USE and the Commission.

## II.

The state-defendants base their motion to dismiss on numerous grounds. With one exception, I will deny the motion. Because most of the arguments do not merit a response, I do not discuss them. Rather, I discuss next the only three issues that warrant a response.

## A.

▮ I have considered and rejected the defense of qualified immunity. Among other things, both of the complaints allege that each of the individual defendants delayed, impeded and prejudged the license application in violation of the Compact. The Compact is a federal law. *See, e.g., County of Boyd v. U.S. Ecology, Inc.,* 48 F.3d 359, 361 (8th Cir.) ("An interstate compact is a creature of federal law"; therefore, federal question jurisdiction exists for the purpose of deciding whether duties under the Compact have been breached), *cert. denied,* 516 U.S. 814, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995). The Compact imposes a federal obligation to exercise objective good faith in the handling of the license application. COMPACT, ART. III(b) & (f) (The "host state shall regulate and license any regional facility" and "[e]ach party state has the right to rely on the good faith performance of each other party state.").

▮ This federal obligation was clearly established when the Compact was signed by Nebraska; that is, the obligation of objective good faith imposed on the host state and its employees was plain from the Compact itself. If what USE and the Generators allege is true (and at the pleading stage I must presume that it is), the individual defendants violated a clearly established federal law of which a reasonable person, in the shoes of the defendants, would have been aware when they delayed, impeded, and prejudged the license application despite the clear mandate of the Compact to act in objective good faith.

## B.

▮ Both USE and the Generators have a right to sue under the Compact. They are members of groups that are specifically mentioned in the Compact. *See, e.g.,* ART. V(c) & (e)(1) (detailing how license applicants are to be selected and granting the Commission the power to authorize the party selected to pursue a license); ART. II(e) (defining "Generators"). It is clear from the structure and language of the Compact that USE, as the builder of the project and applicant for the license, and the Generators, as primary users of and principal funding sources for the project, are among the intended beneficiaries of the obligations of the Compact. It could hardly be otherwise. No developer or generator would participate in the Compact process, with the huge amount of money required (now approaching $100 million), unless they were guaranteed that the host state would act in objective good faith.

The statutory obligation of good faith is not vague or merely precatory. Enforcement of the "good faith" duty is not beyond the competence of the federal courts. Congress has not expressly, or by the adoption of an exclusive enforcement scheme, precluded private suits. As a result, "§ 1983 remains a *generally and presumptively* available remedy for claimed violations of federal law." *Livadas v. Bradshaw,* 512 U.S. 107, 133, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (emphasis added).

## C.

▮ Nebraska and the employees who are sued in their official capacities have Eleventh Amendment immunity to the extent that the relief sought against them in this court goes beyond injunctive and declaratory relief. *Compare, e.g., Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (Eleventh Amendment does not bar suits against individual state officials for injunctive or declaratory relief) *with Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank,* —— U.S. ——, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999) (although the Patent and Plant Variety Protection Remedy Clarification Act expressly abrogated the States' sovereign immunity, the Act's abrogation of immunity is invalid because it cannot be sustained as legislation enacted to enforce the guarantees of the Fourteenth Amendment's Due Process Clause) (*Florida Prepaid*); *College Savings Bank v. Florida Prepaid Postsecondary Educ.*

*Expense Bd.*, — U.S. —, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (a federal court had no jurisdiction to entertain the suit because the Trademark Remedy Clarification Act, subjecting states to suit brought under the Lanham Act, did not validly abrogate Florida's sovereign immunity since no property right within the meaning of the Fourteenth Amendment was at stake and Florida did not waive its immunity) (*College Savings Bank*); *Alden v. Maine*, — U.S. —, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (Fair Labor Standards Act suit could not be brought against Maine in its own courts because the States' immunity from private suit is beyond Congressional power to abrogate by Article I legislation and Maine had not consented to suit) (*Alden*); and *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (Congress lacked power under the Commerce Clause to abrogate States' sovereign immunity) (*Seminole Tribe*).

■ In contrast to the claims of USE and the Generators, the Commission's suit against Nebraska serves as a federal enforcement mechanism. That suit was explicitly authorized, in fact, required, by Congress, pursuant to its plenary power under the Compact Clause, and the power of Congress, under that provision of the Constitution, is not limited by the Eleventh Amendment. *Entergy Arkansas v. Nebraska*, 68 F.Supp.2d 1093, 1096-1113.

■ As compared to the Commission's suit, these private plaintiffs perform no Congressional mandate when they sue Nebraska. While a private right of action exists under the Compact, there is no evident intention on the part of Congress to use private suits as an enforcement mechanism to protect the national interest under the Compact Clause. Still further, there is nothing in the language of the Compact or the enabling legislation that amounts to a waiver by Nebraska of its sovereign immunity for suits in federal court *by private parties. Compare Id.* Indeed, the firm rule of the Supreme Court is that a waiver of sovereign immunity for a private suit is not presumed, but must appear with unmistakable clarity. *College Savings Bank*, 119 S.Ct. at 2226–31. Accordingly, the Eleventh Amendment bars a suit for damages and other similar relief in federal court by private corporations like USE and the Generators.

■ I have now ruled that the Eleventh Amendment applies to a private suit even though it is brought under the Compact. But what about the Due Process and contract interference claims? The Eleventh Amendment specifically protects Nebraska and its officials for damage actions by private citizens in all cases, even under the Due Process Clause of the Fourteenth Amendment, unless that immunity (1) has been validly abrogated by Congress pursuant to Section 5 of the Fourteenth Amendment or (2) is waived by the State. *See, e.g., College Savings Bank*, 119 S.Ct. at 2224–31.

■ Aside from their reliance on the Compact, USE and the Generators have not pointed out any federal legislation that abrogates Nebraska's sovereign immunity for this type of case. For example, section 1983 does not abrogate Nebraska's sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (Section "1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States.").

Nor has anyone pointed out any provision of Nebraska law that amounts to clear waiver by Nebraska for suits by private parties in federal court under circumstances like this case. *Alden*, 119 S.Ct. at 2268 ("To the extent Maine has chosen to consent to certain classes of suits while maintaining its immunity from others, it has done no more than exercise a privilege

of sovereignty concomitant to its constitutional immunity from suit."). In that regard, this court has previously ruled that Nebraska's tort claim statute does not waive the State's sovereign immunity for suits in federal court. *Doran v. Condon,* 983 F.Supp. 886, 890 (D.Neb.1997) (Nebraska's tort claim statute did not waive the State's Eleventh Amendment immunity because "the act does not expressly specify the state's intent to subject itself to suit in *federal* court.") (emphasis in original).

### III.

Nebraska, and her employees who are sued in their official capacities, are generally immune under the Eleventh Amendment from all claims brought by USE and the Generators. The individual officials may, however, be sued for declaratory and injunctive relief under the *Ex Parte Young* exception. The extent to which injunctive relief may include a monetary component is an issue that I need not now decide. *Compare, e.g., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (monetary relief awarded by a prospective injunction was not warranted) *with Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (authorizing prospective injunctive relief that was monetary in nature). *See also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 280–81, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (stating that a case-by-case approach is required).

The remainder of the arguments advanced by the defendants lack merit. As a result, the motion to dismiss will otherwise be denied.

Accordingly,

IT IS ORDERED that:

1. The motion (filing 50) to dismiss is (a) granted to the extent that the State of Nebraska, its agencies and employees, sued in their official capacities, have Eleventh Amendment immunity and (b) is otherwise denied. As a matter of courtesy, and, in addition to mailing a copy of this opinion to the lawyers, the Clerk shall mail a copy of this opinion to the Clerk of the United States Court of Appeals for the Eighth Circuit. He is requested to make a copy of this opinion available to the panel considering the defendants' pending appeal of the preliminary injunction.

2. The motion (filing 114) to stay discovery is denied.