# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 99-4263

_____

| | |
|---|---|
| Entergy, Arkansas, Inc., an Arkansas corporation; Entergy Gulf States, Inc., a Texas corporation; Entergy Louisiana, Inc., a Louisiana corporation; Wolf Creek Nuclear Operating Corporation, a Delaware corporation; Omaha Public Power District, a public corporation and political subdivision of the state of Nebraska, | * * * * * * * * * |
| Plaintiffs, | * * |
| Central Interstate Low-Level Radioactive Waste Compact Commission, | * * * * |
| Plaintiff-Appellee, | * * |
| US Ecology, Inc., a California corporation, | * * * |
| Intervenor, | * |
| v. | * Appeals from the United States * District Court for the District * of Nebraska. |
| State of Nebraska, | * * |
| Defendant-Appellant, | * * |
| Department of Environmental Quality, Nebraska; Randolph Wood, | * * |

individually and in his official capacity;    *
Jay Ringenberg, individually and in his    *
official capacity; Nebraska Department    *
of Health and Human Services    *
Regulation & Licensure; David P.    *
Schor, individually and in his official    *
capacity; Cheryl Rogers, individually    *
and in her official capacity; John Doe;    *
Jane Doe; Doe Companies 1 through    *
20, individually and in their official    *
capacities,    *
                                            *
        Defendants.    *

_____

No. 99-4265

_____

Entergy, Arkansas, Inc., an Arkansas    *
corporation; Entergy Gulf States, Inc.,    *
a Texas corporation; Entergy Louisiana,    *
Inc., a Louisiana corporation; Wolf    *
Creek Nuclear Operating Corporation,    *
a Delaware corporation; Omaha Public    *
Power District, a public corporation and    *
political subdivision of the state of    *
Nebraska,    *
                                            *
        Plaintiffs-Appellees,    *
                                            *
Central Interstate Low-Level    *
Radioactive Waste Compact    *
Commission,    *
                                            *
        Plaintiff,    *
                                            *
US Ecology, Inc., a California    *

corporation,                        *
                                    *
          Intervenor-Appellee,      *
                                    *
     v.                             *
                                    *
State of Nebraska; Department of    *
Environmental Quality, Nebraska;    *
Randolph Wood, individually and in his  *
official capacity; Jay Ringenberg,  *
individually and in his official capacity;  *
Nebraska Department of Health and   *
Human Services Regulation &         *
Licensure; David P. Schor, individually  *
and in his official capacity; Cheryl  *
Rogers, individually and in her official  *
capacity,                           *
                                    *
          Defendants-Appellants,    *
                                    *
John Doe; Jane Doe; Doe Companies 1  *
through 20, individually and in their  *
official capacities,                *
                                    *
          Defendants.               *

_____

Submitted: October 16, 2000
    Filed:  March 8, 2001

_____

Before WOLLMAN, Chief Judge, MORRIS SHEPPARD ARNOLD and MURPHY,
Circuit Judges.

_____

MURPHY, Circuit Judge.

This case arises out of the five state Central Interstate Low-Level Radioactive Waste Compact (the Compact) and was last before the court on Nebraska's appeal from a preliminary injunction in favor of the Central Interstate Low-Level Radioactive Waste Commission (the Commission). See Entergy, Arkansas, Inc. v. Nebraska, 210 F.3d 887 (8th Cir. 2000) (affirming the district court). Now the Nebraska parties bring two interlocutory appeals from the district court's denial of motions seeking Eleventh Amendment and qualified immunity and the dismissal of claims brought by the Commission, some nuclear waste generators, and US Ecology (USE), an applicant for a license to build a disposal facility in Nebraska. We affirm in part, reverse in part, and remand.

I.

The background of the Compact has been described in previous decisions of this court. See id. at 890-95; Nebraska v. Central Interstate Low-Level Radioactive Waste Comm'n, 187 F.3d 982 (8th Cir. 1999); Nebraska v. Central Interstate Low-Level Radioactive Waste Comm'n, 26 F.3d 77 (8th Cir. 1994). Under authority of the Low-Level Radioactive Waste Policy Act of 1980 (the Act) passed by Congress, 42 U.S.C. § 2021b et seq. (1994), Nebraska, Arkansas, Kansas, Louisiana and Oklahoma entered into the Compact. Nebraska, the other four states, and Congress all enacted the Compact as original legislation. See Neb.Rev.Stat. § 71-3521(1996 Reissue) repealed by Neb.Rev.Stat. § 71-3522 (effective August 28, 1999) and Omnibus Low-Level Radioactive Waste Interstate Compact Consent Act, Pub.L. 99-240, tit. II, sec. 222, 99 Stat. 1859, 1863 (1986) (reprinting the Compact which is cited in this opinion by article). The Compact created a framework for the development of low-level radioactive waste facilities and established the Commission as the governing body. See Art. IV. Several provisions address each state's obligations under the Compact. The Compact provides that each state has "the right to rely on the good faith performance of each other party state." Art. III(f). The state selected to host a disposal facility is

-4-

required "to process all applications for permits and licenses required for the development and operation of any regional facility or facilities within a reasonable period from the time that a completed application is submitted." Art. V(e)(2). The Commission is authorized to "[r]equire all party states . . . to perform their duties and obligations arising under this compact." Art. IV(m)(8).

In December 1987, the Commission chose Nebraska as the first member state to host a waste disposal facility. The Commission contracted with USE to file a license application for a disposal facility and then to build and maintain it. Under Nebraska law USE was required to pay all costs associated with licensing, but pursuant to a separate agreement the costs were to be reimbursed at a later date by the Commission. See Neb.Rev.Stat. § 81-1579(2) (1999 Reissue). The Commission entered into agreements with Entergy, Arkansas, Inc., Entergy Gulf State, Inc., Entergy Louisiana, Inc., Wolf Creek Nuclear Operating Corp., and Omaha Public Power District (the Generators) to pass on the cost of the licensing to them. At the time the preliminary injunction was issued in April of 1999, the licensing process had already cost more than $80 million. These costs included monies paid by Nebraska for subcontractors and consultants, direct labor, office and administrative expenses, and other costs associated with the review of the license application. The Generators paid $74 million of the total costs to the Commission which turned over the funds to USE. USE itself contributed the remaining $6 million for preliminary costs connected to the license application, costs for which it has not been reimbursed.

When Nebraska was chosen to provide the first site, Governor Kay Orr publicly stated that the state was not happy to be the host for the disposal facility but that it would honor its commitment under the Compact. In July 1990, USE submitted its license application to the Low-Level Radioactive Waste Program operated by two Nebraska state agencies responsible for licensing waste facilities. Those Nebraska agencies are the Department of Environmental Quality (EQ) and the Department of

Health and Human Services and Licensure (HHS), both parties in this action. The two agencies required USE to answer some 700 questions before they would review its application. E. Benjamin Nelson, a candidate for governor of Nebraska, promised that if he were elected "it is not likely that there will be a nuclear dump [] in Nebraska." Entergy, Arkansas, Inc. v. Nebraska, 46 F.Supp.2d 977, 981 (D.Neb. 1999). Nelson won election, and Randolph Wood became the director of EQ. From that time the state no longer exchanged information with USE. In December 1991, EQ stated that it would not accept any responses to its 700 questions until all of the answers were completed and submitted together; this added to the delay and the cost. In July 1992, the Nebraska Auditor of Public Accounts, found that the EQ had not adopted a budget to control the cost of review or a timetable to complete the work, and it recommended that the EQ do so, but Wood refused. After USE submitted its answers, EQ issued a Notice of Intent to Deny the license in January 1993, due to drainage problems and "wetlands on the site." Appellee's App. II, 387. USE responded by opening a contested case administrative proceeding under Nebraska law to challenge that decision. It later amended its application and withdrew its pending case after reaching a settlement with Nebraska.

After the first contested case was withdrawn, the review process continued with more questions and technical review of the amended application. During this process, Nebraska demanded that the Commission turn over to it federal rebate money received under the Act from the United States Department of Energy (DOE). When the Commission did not turn over the rebate money, EQ directed the contractors doing the state's technical review to cut back their work and billings by twenty-five percent. Nebraska sued the Commission to recover federal rebate funds, and it received part of the money after it promised to accelerate review, but the amount of review work continued to decline after the settlement.

USE's application to build the disposal facility was deemed complete by

Nebraska in June 1995, and EQ and HHS then said that their review of the application would take about one more year to complete. EQ later notified USE that the review would take longer because two technical documents would not be finished until October 1997. When EQ issued these two documents, it stated that the facility met site suitability requirements, but the review continued nevertheless. The Commission then imposed a deadline of January 14, 1997 for Nebraska to complete its review of USE's application, and Nebraska sued to have the deadline voided. This court upheld the district court ruling that the Commission had the power under the Compact to set the deadline. See Central Interstate Low-Level Radioactive Waste Comm'n, 187 F.3d at 987.

USE's amended license application was finally denied in December 1998 (the original application had been submitted in July 1990). The reasons stated for the denial were that there was insufficient depth of the water table at the site, that under the applicable regulations EQ could not consider engineered improvements to the site, and that USE had not shown financial ability to build and run the facility. On January 15, 1999, USE appealed the denial by filing another contested case petition with EQ, thus initiating a second administrative contested case proceeding under Nebraska law.

After USE opened its second contested case proceeding, the Generators filed this action and USE intervened, also as a plaintiff. These parties were frustrated by the delays in the Nebraska process and the soaring costs which had caused them to spend over $80 million on the licensing proceedings by the time of the preliminary injunction in April 1999. They alleged that Nebraska, EQ, HHS, and individual state officials (collectively Nebraska) had violated the good faith provision in the Compact and their constitutionally protected rights to procedural and substantive due process. They brought their constitutional claims under 42 U.S.C. § 1983. USE also alleged that the Nebraska defendants had engaged in tortious interference and conspiracy under state tort law. The plaintiffs sought damages, injunctive and declaratory relief, removal of

the state officials from the licensing procedure, an accounting, and attorney fees. They also asserted equitable subrogation claims against the Commission, but the district court realigned the Commission as another plaintiff in the case. The Commission brought crossclaims against the state of Nebraska for violating the Compact, seeking declaratory and injunctive relief, damages, an accounting, removal of the state from the licensing process and substitution of a neutral third party, and attorney fees.

In support of their claims, the plaintiffs set out detailed factual allegations alleging that Nebraska and its officials had deliberately delayed review of the license for eight years and intended that the process end in denial of the application. They alleged that Nebraska had threatened to begin administrative proceedings anew unless the first application were amended. After USE amended the application and withdrew its first contested case, Nebraska nonetheless treated the amended application as a new one, leading to increased costs and delay. They also alleged that Nebraska breached a settlement it had reached with them over federal rebate funds. Nebraska had agreed that in exchange for part of the rebate funds it would accelerate the pace of review and drop its suit, but after it settled the case and received the funds, it slowed the review process by reducing the work of outside technicians it employed. They alleged that Nebraska had delayed and interfered in the review process by refusing to adopt a reasonable budget or schedule, by making unjustified and incorrect statements regarding the timing of the review with knowledge that the statements would be relied upon, by assisting and encouraging opponents of the disposal site to file suits and delay proceedings, by publicly disparaging the selected site, and by intervening in interstaff discussions. The plaintiffs also alleged that Nebraska and officials at EQ and HHS had improperly denied the amended application by relying on data which USE had furnished with the assurance that Nebraska would not use it in making its decision and by basing their denial on drainage plans in the original application to which they had not raised any objection. The plaintiffs further alleged that unauthorized HHS officials had provided statutory interpretations and participated in the license review. Finally,

they alleged that the ongoing contested case proceeding in Nebraska was not a forum that would address their complaints that political influence and bad faith had tainted the license review process. Nebraska responded by raising its sovereign immunity and arguing that the claims are barred by qualified immunity and the Eleventh Amendment and that the allegations do not state a violation of the Compact or of the due process clause.

While the second contested case was continuing in Nebraska, the parties brought several motions in this case. The Nebraska parties brought two motions to dismiss, arguing that the district court lacked subject matter jurisdiction over the case and that the Commission, the Generators, and USE had failed to state claims upon which relief could be granted. The Commission and the Generators moved for a preliminary injunction to enjoin the ongoing second contested case proceeding in Nebraska.

Before ruling on Nebraska's motions to dismiss, the district court granted the Commission's motion for a preliminary injunction staying USE's administrative contested case proceeding. See Entergy, Nebraska, Inc., 46 F.Supp.2d at 996. The district court held that the Commission would suffer irreparable injury if the proceeding were not enjoined because of the "stunted procedural" nature of the administrative proceeding. See id. at 993-94. The court also found that the Commission was likely to prevail on its claim that Nebraska had acted in bad faith because of Governor Nelson's campaign promises to block the nuclear disposal facility, the refusal of state officials to adopt a budget and review schedule, denial of the 1993 application because of wetlands on the site after outside counsel had advised that there was no problem in respect to wetlands, a work slowdown after the rebate fund settlement providing for accelerated review, and other detailed findings of bad faith. See id. at 994. The court also held that Nebraska had waived its Eleventh Amendment immunity from the Commission's suit for prospective relief. See id. at 995. Based on these findings, the court issued a preliminary injunction in April 1999. See id. at 996.

The district court later issued two separate opinions on Nebraska's motions to dismiss. In the first, the district court dealt with the Commission's claims against the state of Nebraska. See Entergy, Arkansas, Inc. v. Nebraska, 68 F.Supp.2d 1093 (D.Neb. 1999). The court held that Nebraska had waived its Eleventh Amendment immunity from these claims when it entered into the Compact. See id. at 1100. In reaching that decision the court considered the specific provisions of the Compact and the Commission's status under it as the enforcement agency. See id. at 1095, 1099. It also analyzed pertinent case law, the role of Congress, and historical legal relationships. See id. at 1097-99. It concluded that the Eleventh Amendment does not bar actions by the Commission to enforce the Compact, see id. at 1095-1101, and that Nebraska had expressly consented to the Commission's suit for damages in federal court by agreeing to Article III(f) and Article V(e)(2) of the Compact. See id. at 1100-3. The court denied Nebraska's motion to dismiss for failure to state a claim without discussion. See id. at 1104.

In the second opinion, the district court dealt with the claims of the Generators and USE against the state of Nebraska, EQ, HHS, and the individual state officers. See Entergy, Arkansas, Inc. v. Nebraska, 68 F.Supp.2d 1104, 1107 (D.Neb. 1999). The court rejected the state officials' defense of qualified immunity. See id. at 1108. It observed that the complaints alleged violations of the good faith requirement in the Compact and that the Compact was clearly established federal law of which a reasonable state official would have been aware. See id. The court concluded that the Generators and USE had a right to sue under the Compact, as intended beneficiaries, to challenge acts which had "delayed, impeded, and prejudiced the license application" in violation of the Compact's good faith mandate. Id. The court concluded, however, that Nebraska and officials in their official capacity had Eleventh Amendment immunity on the claims of the Generators and USE for anything beyond injunctive and declaratory relief. See id. at 1110. Nebraska's motion to dismiss was otherwise denied. See id.

-10-

Nebraska filed an interlocutory appeal from decisions in each of the opinions by the district court. Before its briefing on these matters was complete, we issued our decision on the appeal from the preliminary injunction. See Entergy, Arkansas, Inc., 210 F.3d at 901. Based on the nature of the Compact and the language of Article IV(e), we held "that by entering into the Compact, Nebraska waived its [Eleventh Amendment] immunity from suit in federal court by the Commission to enforce its contractual obligations." Id. at 897. As a result of this waiver, the Commission could enforce the good faith requirement on Nebraska, but we did not limit the Commission to only prospective relief. See id. We also found that the Commission's enforcement power was not limited to ousting the state from the Compact. See id. In addition to holding that Nebraska had waived its Eleventh Amendment immunity, we pointed out that the district court would also have jurisdiction "to enjoin the state officers under Ex parte Young" and that the Commission had shown ongoing violations of federal law. Id. at 898. We affirmed the issuance of the preliminary injunction. See id. at 901.

In the meantime briefs were completed on these interlocutory appeals. On its appeal from the district court's decision dealing with the Commission's claims, the state of Nebraska continues to assert Eleventh Amendment immunity. It also seeks to include in its interlocutory appeal issues related to the district court's denial of its motion to dismiss for failure to state a claim upon which relief can be granted. The Commission responds that Nebraska waived its sovereign immunity by entering into the Compact, that this court does not have interlocutory jurisdiction to determine whether the Commission has stated a claim, but that if the court reaches the issue, a claim has been stated.

In its appeal from the decision dealing with the claims of the Generators and USE, Nebraska argues that those claims are barred by the Eleventh Amendment and

qualified immunity and that the plaintiffs have failed to state a claim upon which relief can be granted.[1] The Generators and USE respond that qualified immunity is not available to the officials in their individual capacities because clearly established federal law was violated, that the Eleventh Amendment does not bar prospective relief against state officials, and that this court does not have jurisdiction to determine whether claims were stated, but that they were in any event.

The parties disagree on the extent of the issues properly before the court on these interlocutory appeals. They agree that rulings on immunity are reviewable de novo. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Mitchell v. Forsyth, 472 U.S. 511, 527 (1985). They disagree on whether this court can now consider issues raised by the denial of the motions for failure to state a claim. Appellate review is generally only available after final judgment, but there are exceptions, such as the one for immunity issues and another for issues "inextricably intertwined" with those appealable at the interlocutory stage. Swint v. Chambers County Comm'n, 514 U.S. 35, 51 (1995), see United States v. Brakke, 813 F.2d 912, 913 (8th Cir. 1987) (denial of a motion to dismiss for failure to state a claim is not a final appealable order). An issue is "inextricably intertwined" with properly presented issues "'only if it is coterminous with, or subsumed in, the claim before the court on interlocutory appeal--that is, when the appellate resolution of the collateral appeal necessarily resolves the pendent claims as well.'" Kincade v. City of Blue Springs, Mo., 64 F.3d 389, 394 (8th Cir. 1995), *quoting* Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995).

---

[1]Nebraska claims for the first time on appeal that plaintiff Omaha Public Power District (OPPD) cannot assert due process claims because OPPD is a political subdivision of the state. OPPD argues that this is incorrect because it is substantially independent. We decline to reach this issue not raised in the district court. See United States v. Nelson, 109 F.3d 1323, 1325 (8th Cir. 1997).

II.

Nebraska argues that the district court erred when it denied its motion to dismiss the Commission's claims. It says the Commission's claims are barred by the Eleventh Amendment because it did not waive its immunity by entering into the Compact. Even if it did waive its immunity, the waiver was only from suits by party states and the Commission is not a party to the Compact. Finally, Nebraska contends that the Commission failed to state a claim upon which relief can be granted under the Compact.

Nebraska argues in its briefing that the Commission's claims are barred by the Eleventh Amendment, but we have already held "that by entering into the Compact, Nebraska waived its immunity from suit in federal court by the Commission to enforce its contractual obligations." Entergy, Arkansas, Inc., 210 F.3d at 897. "It has long been recognized that a state may waive its Eleventh Amendment immunity." See id. at 896. A waiver of immunity occurs when a state makes a "clear declaration" of its intention to submit to suit in federal court as evidenced by the language of the text or an "overwhelming implication from the text as [will] leave no room for any other reasonable construction." Edelman v. Jordan, 415 U.S. 651, 673 (1974) (internal quotation and citation omitted). Although our review of the district court's decision to grant an injunction was under an abuse of discretion standard, we reviewed de novo its legal conclusion that Nebraska had waived its Eleventh Amendment immunity. See Entergy, Arkansas Inc., 210 F.3d at 897. We carefully considered the Eleventh Amendment issue before deciding it in the course of the preliminary injunction appeal, and our holding that Nebraska waived its immunity from claims by the Commission, including claims for damages, is now the law of the case. See In re Progressive Farmers Assoc., 829 F.2d 651, 655 (8th Cir. 1987).

-13-

Nebraska argues that the Commission is not a party to the Compact and so it may only seek future performance, not damages or an accounting for past breaches. In the Compact which Nebraska entered, the party states chose to delegate authority to the Commission to initiate "any proceedings. . .before any court of law," which includes suits for breach of the Compact. Art. IV(e). The states not only allowed the Commission to initiate proceedings, but mandated that the Commission "[r]equire all party states and other persons to perform their duties and obligations arising under this compact." Art. IV(m)(8). A Compact between states is "after all a contract. . . . It remains a legal document that must be construed and applied in accordance with its terms. . . . There is nothing in the nature of compacts generally. . . that counsels against rectifying a failure to perform in the past as well as ordering future performance called for by the Compact." Texas v. New Mexico, 482 U.S. 124, 128 (1987) (internal quotations and citations omitted). This court has already held that "revocation or suspension of a state's membership is [not] the exclusive enforcement mechanism" under the Compact. Entergy, Arkansas, Inc., 210 F.3d at 897. By entering into a compact in which the party states delegated to the Commission their authority to sue for breach and required the Commission to enforce contractual obligations, Nebraska waived its Eleventh Amendment immunity from suit by the Commission in federal court.

Nebraska also seeks to obtain review of the district court's denial of its motion to dismiss the Commission's action for failure to state a claim upon which relief can be granted. Nebraska argues that the Commission has failed to state a claim because it is not a party to the Compact and the Compact does not provide for damages, but we have resolved the underlying issue by holding that the Commission has the right to sue under the Compact for the relief its seeks. Whether the Commission has stated a claim is thus intertwined with Nebraska's Eleventh Amendment argument, and we have jurisdiction to decide it. See Kincade, 64 F.3d at 394. We hold that since the Compact could permit the relief sought, the Commission has stated a claim, and the district court

-14-

did not err by denying the motion to dismiss. We affirm the district court's decision in respect to the Commission's claims.

## III.

Nebraska also argues that the district court erred when it denied its motion to dismiss the claims of the Generators and USE. Nebraska argues that qualified immunity bars the claims under the Compact and the due process clause against the state officials in their individual capacity. Nebraska also asserts that the claims against the state and the officials in their official capacity are barred by the Eleventh Amendment. Nebraska further contends that the appellees failed to state a claim upon which relief can be granted under the Compact and the due process clause.

Qualified immunity shields state officials performing discretionary functions from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Nebraska asserts that the Generators and USE have not alleged violations of federal law because they cannot enforce the good faith provision in the Compact and they do not have a constitutionally protected property interest and thus lack due process rights. Nebraska also denies that its actions could amount to due process violations and claims that the state administrative proceeding on the amended application can overcome any procedural defects that may have occurred earlier. Finally, Nebraska argues that its officials acted rationally in denying the application. The Generators and USE respond by arguing that they can enforce the good faith provision in the Compact. They also assert that they have alleged violations of their due process rights. They claim they have a protected property interest created by their payment of over $80 million in costs by April 1999 with the expectation that the license application would receive a timely review based on the Nebraska Administrative Code

(N.A.C.) (a license shall issue if twelve requirements are met.)  See N.A.C. tit. 194, Ch. 3, § 009.  Moreover, they contend that the limited nature of the enjoined case proceeding was such that it could not remedy prior procedural violations.  Finally, they argue that the actions of the state officials were so arbitrary that they violated their substantive due process rights.

A.

On our de novo review of the district court's ruling denying qualified immunity on the claims of the Generators and USE under the Compact, we must examine whether appellees have alleged the violation of any clearly established federal constitutional or statutory rights. See Whisman v. Rinehart, 119 F.3d 1303, 1309 (8th Cir. 1997).  We have already held that the Compact is federal law, see Entergy, Arkansas, Inc., 210 F.3d at 897, but Nebraska argues that the good faith provision does not provide the Generators and USE with a clearly established federal statutory right.  The Generators and USE respond that they are intended beneficiaries of the Compact and therefore entitled to enforce the good faith promise in Article III(f).  Three factors are relevant in determining whether a specific federal statutory provision gives rise to an enforceable federal statutory right: 1) "Congress must have intended that the provision in question benefit the plaintiff"; 2) "the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and 3) "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms."  Blessing v. Freestone, 520 U.S. 329, 340-41 (1997) (internal citations omitted).

The Generators cite a number of Compact provisions related to them to show that they are intended beneficiaries of the Compact and able to enforce the good faith provision.  They argue that they are included in the definition of "Generators" because

-16-

they manufacture nuclear waste. See Art. II(f). They also argue that Article III(a), which requires a party state to accept "all wastes generated within the region," was intended to benefit them because they produce waste. Art. III(a). According to the Generators, Article III(c) and (d) show they are intended beneficiaries because the rates for a "user shall be fair and reasonable . . ." and they are "users" under the Compact. Art. III(c). The Generators also point out that Article VI(d) prevents states from making a generator's access to a waste facility more costly. See Art. VI(d). They further argue that the "take title" provision, which requires a violating state to take title to waste, demonstrates that Congress intended to benefit generators. See 42 U.S.C. §2021e(d)(2)(C) (2000). The Generators and USE all argue that they are included in the definition of "person" in Article II(m). See Art. IV(l). USE claims it is an intended beneficiary because Article V(b) allows the Commission to "seek applicants for the development and operation of regional facilities" and Article V(c) sets out the criteria for evaluating applications. Art. V(b) & (c). Finally, USE claims that it is benefitted by the requirement in Article V(e)(2) that a license issue in a reasonable time and that the Nebraska administrative process creates a benefit for applicants. See Art. V(e)(2). Nebraska responds that the Compact was enacted to benefit party states and the general public, not private entities, see Art. I, and that the language of Article III(f) is specifically limited to party states and does not refer to generators or applicants. See Art. III(f).

The  provision the Generators and USE seek to enforce does not provide them with a federal statutory right. It is true that the Compact refers to entities like them and that some of its provisions might possibly provide them with an enforceable federal statutory right or a protected property interest under state law (since the Compact was also enacted as original legislation by each member state). The Compact provision at issue here, however, is the one containing the obligation of good faith. Article III(f) of the Compact gives each member state the right to rely on "the good faith performance of each other." Article III(f) states that "[e]ach *party state* has the right to rely on the

-17-

good faith performance of each other *party state*." (emphasis added). This provision does not name or suggest any other entities possessing such a right. Since we cannot say that Congress intended this provision to benefit the Generators and USE, we need not consider the other <u>Blessing</u> factors.

Article III(f) expressly limits to whom good faith is owed, and the Generators and USE are not included and would be at most incidental beneficiaries. Since these parties are unable to establish that Article III(f) provides them with a federal statutory right, the individual state officials could not have violated any clearly established law under it and they are entitled to qualified immunity on these claims. Their inability to enforce the good faith provision also means they have failed to state a claim upon which relief can be granted in respect to the claims they have asserted under the Compact. <u>See</u> <u>Kincade</u>, 63 F.3d at 394. We thus reverse the district court's ruling denying qualified immunity on these claims and denying the motion to dismiss them.

## B.

The Nebraska officials also argue that they are entitled to qualified immunity on the procedural and substantive due process claims of the Generators and USE. The Generators and USE alleged that Nebraska has been deliberately delaying the review process since 1990, leading to their payment of more than $80 million in costs by April 1999 without achieving a license or closure in the process. They alleged that Nebraska's tactics have deprived them of due process by threatening to begin review of the application anew, breaching the first contested case settlement and then the federal rebate settlement by slowing the review process, making incorrect statements about the timing of review, encouraging and engaging in numerous lawsuits, not following their own regulations, interpreting regulations in a way contrary to law, not providing fair procedures, not judging the license application on its merits, and denial

of the license application for groundwater problems despite state findings that the site met suitability requirements. They also claim that key officials were improperly influenced by political pressure.

The Nebraska officials contend that they are entitled to qualified immunity from the procedural due process claims because the appellees do not have a constitutionally protected property interest, and even if they did, the administrative contested case proceeding with available judicial review can remove the effect of any past procedural violations. They also argue that they are entitled to immunity from the substantive due process claims because they acted rationally. The Generators and USE respond that they have a constitutionally protected property interest created by the $80 million they paid over the last eleven years in reliance on the N.A.C. which states that a license shall issue if twelve requirements are met. See N.A.C. tit. 194, Ch. 3, § 009. In their view the administrative contested case proceeding and opportunity for judicial review will not eliminate the effect of the past procedural violations because the administrative hearing officer has already ruled inadmissible any evidence of political taint in the licensing history. The Generators and USE assert that state officials have acted so egregiously with their delay tactics and the continuing intent to deny the application that they have deprived them of their rights to substantive due process.

In order to assert a procedural due process violation in this case, the parties agree that the Generators and USE must first establish a legitimate claim of entitlement to a property interest created by state law. See Board of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972). An entitlement can be established by substantive standards or criteria that guide an official's discretion, see Stauch v. City of Columbia Heights, 212 F.3d 425, 429 (8th Cir. 2000), and in this case might possibly be found in the procedures and requirements listed in the N.A.C. for the issuance of a license, the requirement that the licensing process costs be paid by USE (and ultimately the Generators) and the very large payments already made in reliance on Nebraska's

procedures, the administrative scheme set up by the Compact which was enacted into state law, or other state laws. A successful claim must also rest on a denial of fundamental procedural fairness, see Fuentes v. Shevin, 407 U.S. 67, 80 (1972), such as lack of fair procedures or impartial officials incapable of judging the license application on its merits. See Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal., 508 U.S. 602, 617-18 (1993); Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980); Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Assoc., 426 U.S. 482, 493 (1976). The district court never discussed whether appellees have a protected property interest or a claim of denial of fundamental procedural fairness. See Entergy, Arkansas, Inc. 68 F.Supp.2d 1108-10. It also never discussed qualified immunity in respect to such claims. See id. at 1108.

To assert a substantive due process violation in this case, the parties agree that the Generators and USE must establish a constitutionally protected property interest and that state officials used their power in such an arbitrary and oppressive way that it "shocks the conscience." See County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998). This standard could be met if the officials' conduct was "intended to injure in some way unjustifiable by any government interest," id. at 849; or if their actions were done with "deliberate indifference" to a party's protected rights in a situation where officials had an opportunity to consider various alternatives. See Neal v. St. Louis County Bd. of Police Comm'rs, 217 F.3d 955, 958 (8th Cir. 2000); see also Whitley v. Albers, 475 U.S. 312, 320 (1986).

In summarily denying the defense of qualified immunity and the motion to dismiss the claims of the Generators and USE, the district court only discussed claims asserted under the Compact. See Entergy, Arkansas, Inc., 68 F.Supp.2d at 1108. It gave no indication that it had considered their constitutional claims or whether the officials were entitled to qualified immunity on them. See id. We thus lack jurisdiction

over these issues, and remand for the district court to analyze and rule on them.[2] See Jones v. Coonce, 7 F.3d 1359, 1365 (8th Cir. 1993).

## III.

After a thorough study of the record and the briefs, we affirm in part and reverse in part. We affirm the district court's determination that Nebraska waived its Eleventh Amendment immunity under the Compact and that the Commission has not failed to state a claim. We reverse the denial of qualified immunity for the state officials on the claims by the Generators and USE which allege a violation of the good faith provision in the Compact. We also reverse the denial of Nebraska's motion to dismiss those good faith claims for failure to state a claim upon which relief can be granted. We decline to address issues over which we lack jurisdiction on these interlocutory appeals, and we remand for further proceedings consistent with this opinion.

---

[2]On remand the district court may have occasion to deal with various other issues not properly before us at this time, either because they were not resolved by the district court, see Boatman's First Nat'l Bank of Kansas City v. Kansas Pub. Employees Ret. Sys., 57 F.3d 638, 641 (8th Cir. 1995), or because of the interlocutory nature of these appeals. See Kincade, 63 F.3d at 394. For example, Nebraska argues that the due process claims of the Generators and USE against the state officials in their official capacity are barred by the Eleventh Amendment; appellees respond that the Eleventh Amendment does not prevent a suit against state officials for prospective equitable relief to prevent violations of federal law. See Ex parte Young, 209 U.S. 123, 159-60 (1908). The district court ruled that the state officials are "generally immune" except for Ex parte Young relief, but it did not discuss the nature of the due process claims. See Entergy, Arkansas, Inc., 68 F.Supp.2d at 1110. It also did not make clear the nature of any holding in respect to the state tort claims.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.