ENTERGY ARKANSAS, INC., an Arkansas corporation; Entergy Gulf States, Inc., a Texas corporation; Entergy Louisiana, Inc., a Louisiana corporation; Wolf Creek Nuclear Operating Corporation, a Delaware corporation; Omaha Public Power District, a public corporation and political subdivision of the State of Nebraska, Plaintiffs,

Central Interstate Low–Level Radioactive Waste Commission, Realigned Plaintiff,

US Ecology, Inc., a California corporation, Intervening Plaintiff,

v.

State of NEBRASKA, et al., Defendants.

No. 4:98CV3411.

United States District Court, D. Nebraska.

Aug. 29, 2001.

John P. Heil, Thomas E. Johnson, Patrick J. Ickes, Baird, Holm Law Firm, Omaha, NE, Stephen M. Bruckner, Joseph E. Jones, Fraser, Stryker Law Firm, Omaha, NE, for plaintiffs.

Alan E. Peterson, Shawn D. Renner, Cline, Williams Law Firm, Lincoln, NE, Patrick T. O'Brien Butler, Galter Law Firm, Lincoln, NE, for realigned plaintiff.

Steven G. Seglin, Rocky C. Weber, Crosby, Guenzel Law Frim, Lincoln, NE, for intervening plaintiff.

Patrick T. O'Brien, Butler, Galter Law Firm, Lincoln, NE, William Bradford Reynolds, Howrey, Simon Law Frim, Washington, DC, Annette M. Kovar, Neb. Dept. of Environmental Quality, Lincoln,

NE, John L. Wittenborn, Collier, Shannon Law Firm, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

The Court of Appeals directed me to reconsider whether the Generators and USE possessed "property interests" sufficient to give them a claim for denial of procedural or substantive due process[1] under the Fourteenth Amendment. *Entergy Arkansas, Inc. v. Nebraska,* 241 F.3d 979, 990–92 (8th Cir.2001), *petition for cert. filed,* 70 U.S.L.W. 3076 (U.S. July 16, 2001) (No. 01–87). This issue was raised in various motions to dismiss filed by the defendants both before and after the remand order of the Court of Appeals.[2] In addition, the defendants have again sought to dismiss the Commission's suit. As before, I presume detailed knowledge of this very complex case.

### The Commission

I will deny the motions asserted against the Commission. The arguments advanced by the defendants have been disposed of earlier either by this court or the Court of Appeals. To the extent that the defendants assert a variation of those earlier arguments, they are without merit.

On a related matter, I see no good reason to stay consideration of the motions or this case while the defendants request relief from the Supreme Court regarding the Commission's suit. In this regard, I note that the Court of Appeals did not stay the issuance of the mandate. (Filing 224 (mandate filed May 1, 2001).)

### The Generators, USE and "Property Interests"

■ I will grant the motions to the extent they seek to dismiss the procedural and substantive due process claims of the Generators and USE which are asserted under the Fourteenth Amendment to the Constitution. I find and conclude that the Generators and USE have not alleged the deprivation of a "property interest" within the meaning of the Fourteenth Amendment.[3]

The Fourteenth Amendment protects us from the government taking our property[4] without procedural or substantive due process of law. *Compare Stauch v. City of Columbia Heights,* 212 F.3d 425, 429 (8th Cir.2000) (owners possessed protected property interest in the renewal of their rental license because renewal was required when three nondiscretionary conditions were satisfied) *with Movers Warehouse, Inc. v. City of Little Canada,* 71 F.3d 716, 718 (8th Cir.1995) (no property interest in renewal of bingo license when the city had unfettered discretion to withhold issuance of the license). *See also Littlefield v. City of Afton,* 785 F.2d 596, 601 (8th Cir.1986) (discussing when an applicant's interest in a license which is denied rises to a constitutionally protected property interest), *overruled on other grounds, Chesterfield Dev. Corp. v. City of*

1. The Court of Appeals made clear that USE and the Generators must have a "property interest" as predicate for both their procedural and substantive due process claims. *Id.* at 990–91.

2. After the decision by the Court of Appeals, the Commission, the Generators and USE filed amended complaints. In the new pleadings, certain earlier claims were abandoned. That is, there are no longer state law claims nor claims for damages asserted against the defendants individually.

3. Because this decision entirely disposes of the due process claims asserted by USE and the Generators, the other arguments raised by the defendants in defense to these claims are moot. I therefore decline to address them.

4. It also protects our lives and liberty from similar deprivations. Neither life nor liberty interests are implicated in this case.

*Chesterfield,* 963 F.2d 1102, 1104 n. 2 (8th Cir.1992).

The Generators and USE claim that they have a property interest in the nuclear waste disposal license itself and the money spent in an attempt to obtain the license. Broadly speaking, the issue is whether the defendants denied the Generators and USE procedural and substantive due process when, after accepting tens of millions of dollars from them to process the license application, they (taking the complaint as true) denied the license for crude political purposes.

As directed by the Court of Appeals, I have considered "the procedures and requirements listed in the N.A.C. [Nebraska Administrative Code]" regarding the issuance of nuclear waste disposal licenses, "the requirement that the licensing process costs be paid by USE (and the ultimately the Generators)," the "very large payments already made in reliance on Nebraska's procedures," "the administrative scheme set up by the Compact which was enacted into state law," and "state law" more generally, *Entergy Arkansas,* 241 F.3d at 991, to determine whether the Generators and USE have a "property interest" in the license and the money spent to obtain one. At the same time, I also recognize that the Court of Appeals has decided that the Compact itself does not allow the Generators or USE to sue the defendants for breach of the Compact's "good faith" obligation. *Id.* at 990.

▬ Next, I realize that "[p]roperty interests are not created by the Constitution but rather stem from an independent source such as state law." *Stauch,* 212 F.3d at 429. Most importantly, I recognize that parties asserting a property interest must have something "more than a unilateral expectation of it." *Id.* That is, they "must possess a legitimate claim of entitlement to it." *Id.*

USE and the Generators claim that their "property interest" was created by Nebraska's "substantive standards or criteria that guide an official's discretion." *Entergy Arkansas,* 241 F.3d at 990–91 (citing *Stauch,* 212 F.3d at 429). In particular, they assert that (1) Nebraska's regulations require the issuance of a license to USE if certain criteria are satisfied; (2) Nebraska law contemplates that the Generators would finance the USE application; and (3) upon issuance of the license, Nebraska law contemplates the granting of a credit against disposal rates for all or a portion of the monies paid by the Generators to finance the acquisition of the license. Accordingly, USE (as the license applicant) and the Generators (as the financiers and users of the disposal site) had a protected property interest.

The pivotal question is whether Nebraska's discretion to issue the license to USE was substantially limited. If it was, USE, as the applicant, had a property interest in the license. If USE had a property interest in the license, the Generators also had a property interest protected by the Fourteenth Amendment because Nebraska law contemplated that the Generators would finance the entire process and recoup some of the payments when the site became operational after it was licensed.

On the other hand, if USE did not possess a property interest in the license, then the Generators cannot reasonably claim a property interest in the money spent in an attempt to obtain the license. That is, the Generators cannot logically have a "property interest" in money they spent to finance a license application when the underlying right to apply for the license creates no property interest in the party applying for it. Simply put, the Generators' interest can be no more expansive than USE's interest.

Did Nebraska impose significant limits on itself regarding the power to issue or deny a license, thus creating a property interest in the license? The answer to that question is found in N.A.C. tit. 194, Ch. 3, § 009, the regulation relied upon by USE and the Generators. It establishes twelve criteria for issuance of a license and states as follows:

*009.* Requirements for issuance of a license. A license for the receipt, possession, and disposal of waste shall be issued by the department upon finding that:

*009.01* The application is complete;

*009.02* The issuance of the license will not constitute an unreasonable risk to the public health and safety and the environment;

*009.03* The applicant is qualified by reason of training and experience to carry out the disposal operations requested in a manner that protects health and minimizes danger to life, property and the environment;

*009.04* The applicant's proposed disposal site, disposal design, facility operations including equipment, facilities and procedures, disposal site closure and post-closure institutional control shall be consistent with a zero-release objective and shall protect the public health and safety in that they provide reasonable assurance that the general population will be protected from releases of radioactivity as specified in Chapter 4, Section *002;*

*009.05* The applicant's proposed disposal site, disposal site design, facility operations including equipment, facilities and procedures, disposal site closure and post-closure institutional control will protect the public health and safety in that they will provide reasonable assurance that individual inadvertent intruders are protected in accordance with Chapter 4, Section *003;*

*009.06* The applicant's proposed facility operations, including equipment, facilities and procedures, will protect the public health and safety in that they will provide reasonable assurance that the Standards for Protection Against Radiation specified in Title 180 are met;

*009.07* The applicant's proposed disposal site, disposal site design, facility operations, disposal site closure and post-closure institutional control will protect the public health and safety in that they will provide reasonable assurance that long-term stability of the disposed waste and the disposal site will be achieved and will eliminate to the extent practicable the need for ongoing active maintenance of the disposal site following site closure;

*009.08* The applicant's demonstration provides reasonable assurance that the applicable technical requirements of Chapter 5 will be met;

*009.09* The applicant's proposal for institutional control provides reasonable assurance that such control will be provided for the length of time necessary to ensure the findings in *009.04* through *009.07* of this Chapter and that the institutional control meets the requirements of Chapter 5, *009;*

*009.10* The financial or surety and insurance arrangements of the applicant's proposal meet with the requirements of Chapter 6[;]

*009.11* The information submitted and obtained in *002.01E* of this Chapter has been reviewed by the department, and the department finds that such person can adequately comply with the provisions of the application

and applicable laws, rules, and regulations;

009.12 Any additional information submitted, as requested by the department, is adequate.

N.A.C. tit. 194, Ch. 3, § 009.

This regulation does not create a property interest. In particular, Nebraska reserves the right to decide whether the licensed disposal site will "constitute an unreasonable risk to the public health and safety and the environment." *Id.* (second criterion). The decision about whether the public health and safety will be furthered by granting or denying a license is the quintessential example of a discretionary decision. In other words, there can be no legitimate claim of *entitlement* to a nuclear waste disposal license when issuance of it turns almost entirely upon such open-ended factors as the "public health and safety."

The concern for the "public health and safety" is not an isolated part of the regulation. Virtually every criterion set forth in the regulation emphasizes this point by using such words as: the operations will be conducted "in a manner that protects health and minimizes danger to life, property and the environment," *id.* (third criterion); "shall protect the public health and safety in that they provide reasonable assurance that the general population will be protected from releases of radioactivity . . . .," *id.* (fourth criterion); "will provide reasonable assurance that individual inadvertent intruders are protected," *id.* (fifth criterion); the "applicant's proposed facility operations . . . will protect the public health and safety in that they will provide reasonable assurance that the Standards for Protection Against Radiation . . . are met," *id.* (sixth criterion); "will protect the public health and safety in that they will provide reasonable assurance that long-term stability of the disposed waste and the disposal site will be achieved and will

eliminate to the extent practicable the need for on-going maintenance," *id.* (seventh criterion); "provides reasonable assurance . . . . [regarding technical requirements and institutional control]," *id.* (eighth and ninth criteria); "such person can adequately comply with the provisions of the application and applicable laws, rules, and regulations," *id.* (eleventh criterion); and "[a]ny additional information submitted, as requested by the department, is adequate." *Id.* (twelfth criterion).

As a result, Nebraska retained such great discretion that the regulation, although nominally mandatory in nature, cannot be said to provide USE and the Generators with a "legitimate claim of entitlement" to a license. *See, e.g., Green v. City of St. Paul,* 187 F.3d 641 (table), *available at* 1999 WL 376099, at *1 (8th Cir.1999) (the plaintiff did not have a protected property interest in issuance of a cabaret license because the city could deny the license based upon the determination that the "public health, safety or welfare would be otherwise adversely affected"); *Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 679 (3rd Cir.1991) (city ordinance conditioning issuance of license upon finding that the facility is a "safe and proper place" did not create property interest); *Bayview–Lofberg's Inc. v. City of Milwaukee,* 905 F.2d 142, 145 (7th Cir.1990) (no property interest where license could be denied based upon "other factors which reasonably relate to the public health, safety and welfare"); *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2nd Cir.1985) (no property interest where issuance of the license turned upon such statutory criteria as the "health, safety, and general welfare" of the public). Therefore, the motions to dismiss the procedural and substantive due process claims of the USE and the Generators must be granted since those parties have no "prop-

**1006**

erty interest" which is protected by the Fourteenth Amendment.

#### The Generators, USE and the Remaining Claims

The Generators and USE have asserted a claim of equitable subrogation based upon the Commission's suit against the defendants. They have also asserted a cross claim against the Commission. The defendants have not moved to dismiss the equitable subrogation claim.

As a consequence, the dismissal of the procedural and substantive due process claims does not result in the Generators or USE being removed from this suit. On the contrary, they are free to maintain their equitable subrogation claim and cross claim. USE and the Generators may participate with the Commission in discovery against the defendants based upon their equitable subrogation interest. The degree to which USE and the Generators may participate in a trial against the defendants must be resolved on motion of an interested party. I leave the timing of that motion to the parties, but suggest that it be submitted well before the pretrial conference.

Accordingly,

IT IS ORDERED that:

1. The defendants' motions (filings 50 and 263) to dismiss the Commission's complaint are denied.

2. The defendants' motions (filings 50, 83, and 264) to dismiss the procedural and substantive due process claims of USE and the Generators are granted and those claims are dismissed with prejudice. However, judgment shall be withheld until final disposition of this case.